# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **ANR PIPELINE COMPANY** | **CIVIL DOCKET NO. 3:24-cv-01403** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **170.7942 ACRES MORE OR LESS, IN RICHLAND & WEST CARROLL PARISHES, ET AL** | **MAGISTRATE JUDGE KAYLA D. MCCLUSKY** |

## RULING AND PRELIMINARY INJUNCTION

On February 18, 2025, the Court heard argument and received evidence on Plaintiff ANR Pipeline Company's ("ANR"), MOTION FOR ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION authorizing it immediate entry on the Defendants' properties (the "Motion"). [Doc. 4]. The Court, having considered the Motion and the evidence presented at the hearing, finds that the Motion is well taken and should be GRANTED.

### BACKGROUND

ANR is a Delaware corporation that is authorized to transact business in Louisiana. [Doc. 1, p. 3]. Because ANR is engaged in the "transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale," it is a "natural-gas company" pursuant to 15 U.S.C. § 717a(6).[1] ANR is the holder of

---

[1] 15 U.S.C. § 717f(h) states that "the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000." In this matter, ANR tendered a settlement offer of at least three thousand dollars for each tract of land sought and Defendant landowners did not accept these offers at the time the Complaint was filed. "A plaintiff's offer on a property interest may constitute the minimum estimate of what constitutes just compensation" in condemnation proceedings under the Natural Gas Act. *Columbia Gas Transmission Corp. v. Rodriguez*, 551 F. Supp. 2d 460, 462 (W.D. Va. 2008), *citing ANR Pipeline Co. v. 62.026 Acres of Land*, 389 F.3d 716, 718 (7th Cir. 2004).

a Certification of Public Convenience and Necessity ("Certificate") [Doc. 1-23], issued by the Federal Energy Regulatory Commission ("FERC") on July 25, 2024, which authorizes ANR to construct, operate, maintain, and abandon an interstate natural gas pipeline and all necessary appliances, appurtenances, fixtures, equipment, and facilities.

After the FERC Certificate was issued, ANR filed the instant lawsuit, seeking to acquire servitudes of right of use and rights-of-way over fourteen tracts of real property located in Richland and West Carroll Parishes, Louisiana (the "Property")[2] for the purpose of constructing a new 30-inch-diameter pipeline on the Property and abandoning the existing 30-inch diameter pipeline situated on the Property in connection with the Oak Grove Enhancement Project (the "Project"). [Doc. 1]. On certain of the tracts comprising the Property, ANR also seeks to acquire temporary workspaces, which are necessary for ANR to perform construction, abandonment, and operational-related activities, including restoration or clean-up activities (the foregoing rights being sought will be referred to, collectively, as "the

---

[2] The Complaint reflects a greater number of defendants and tracts of land. As the litigation has progressed, a number of defendants have been dismissed. ANR initially named twenty-two defendants who it believed to be the record owners of the Property. However, since the filing of the Complaint, ten landowners have entered into settlements with ANR, and twelve landowners remain (hereinafter, "Defendants"). [Docs. 1, 50, 55, 61, 69, 82]. The remaining Defendants, and their tracts of land, are as follows: George B. Franklin & Son, Inc. (Tracts No. RI-004.000, No. RI-023.000), Dairyland, LLC (Tracts No. RI-005.000, No. RI-007.000), C&G of Winnsboro, Inc. (Tracts No. RI-015.000, No. RI-017.000, No. RI-019.000), Regan Cobb, LLC (Tract No. RI-016.000), R&S of Rayville, LLC and Scogan, LLC (Tracts No. RI-018.000, No. RI-023.100), Brian Lane Miller (Tract No. WC-026.000), Ray G. Raley and Nina G. Raley (Tract No. WC-036.000), Duck Flight, Inc. (Tract No. WC-037.000), and Donald M. Raley and Dondarosa Farms, LLC (Tract No. WC-038.000). [Doc. 84].

Proposed Servitudes").[3] *Id.* at ¶ 13. Further, ANR seeks rights of ingress and egress on the Property to access the Proposed Servitudes and the immediate possession of such servitudes. *Id.* at ¶¶ 17-18. Lastly, ANR seeks "the ascertainment and award of just compensation and damages" to the Defendant property owners.[4] *Id.* at p. 2.

On October 22, 2024, ANR filed the instant Motion, requesting that the Court enter an order establishing a substantive right to condemnation and issue a preliminary injunction granting immediate possession of the Property. [Doc. 4-1]. Service of Notice of Condemnation has been completed against the remaining Defendants pursuant to Federal Rule of Civil Procedure 71.1(d). [Doc. 52]. A number of Defendants have not filed an answer or a notice of appearance in accordance with Federal Rule of Civil Procedure 71.1(e).

On February 6, 2025, Defendants C&G of Winnsboro, Inc., Regan Cobb, LLC, R&S of Rayville, LLC, Scogan, LLC, and George B. Franklin & Son, Inc. opposed ANR's Motion [Doc. 78], and on February 9, 2025, ANR filed a Reply [Doc. 79]. On February 18, 2025, the Court conducted an evidentiary hearing on the Motion in Monroe, Louisiana.[5] All issues pertaining to the Motion having been fully briefed and argued by the parties, the Motion is now ripe for ruling.

---

[3] The location of each Proposed Servitude is depicted in [Docs. 84-1 to 84-14].

[4] *Id.*

[5] Participating in the hearing were Plaintiff ANR and Defendants George B. Franklin & Son, Inc., C&G of Winnsboro, Inc., Regan Cobb, LLC, R&S of Rayville, LLC, Scogan, LLC, and C. Daniel Rawls. Indicating that they have no objection to condemnation and only to valuation at this time, the following remaining Defendants waived their appearances at the hearing: Dairyland, LLC, Brian Lane Miller, Ray G. Raley, Nina G. Raley, Duck Flight, Inc., Donald M. Raley, and Dondarosa Farms, LLC.

## LAW AND ANALYSIS

### I. Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, and under 28 U.S.C. § 1337, because this action arises under an Act of Congress regulating interstate commerce. Jurisdiction is also proper in this Court pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h).[6] Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### II. Substantive Right of Condemnation

ANR asks the Court to grant a preliminary injunction authorizing it to enter the Property to begin construction-related activities. Federal district courts have consistently held that if the requirements for Rule 65 injunctive relief are satisfied, pipeline companies with the authority of eminent domain under the Natural Gas Act may, prior to the trial on compensation, be granted immediate access to the subject property to begin construction-related activities. *Gulf Crossing Pipeline Co., LLC v. 86.36 Acres of Land*, 2008 WL 2465892, at *2 (W.D. La. June 18, 2008), *citing E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004). The Court must therefore first

---

[6] "When any holder of a [FERC Certificate] acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts." 15 U.S.C. § 717f(h).

determine the threshold issue of whether ANR has a substantive right to condemn under the Natural Gas Act. *Id.* at *1.

"In order to establish the substantive right to condemn pursuant to the Natural Gas Act, the movant must establish: (1) that it holds a FERC Certificate authorizing it to construct the facilities contemplated in the Project; (2) that it has been unable to acquire the property rights in question by contract with the landowner; and (3) that the condemnation is for a public and necessary purpose." *Columbia Gulf Transmission, LLC v. 14.226 Acres More or Less, in Lafourche Par.*, 2023 WL 7112828, at *2 (E.D. La. Oct. 27, 2023), *citing* 15 U.S.C. § 717f(c)(1)(A), (h), and *E. Tenn. Nat. Gas, LLC,* 2006 WL 1133874, at *1 (W.D. Va. Apr. 26, 2006).

Here, the Court finds that ANR is the holder of a valid FERC Certificate, that FERC has determined that the Defendants' Property is needed for the Pipeline, and that ANR has been unable to acquire the Defendants' Property by agreement. [Doc. 1-22]; [Doc. 4-2]. As such, ANR has satisfied all requirements of the Natural Gas Act, 15 U.S.C. § 717f(h). *See Gulf Crossing Pipeline Co. LLC,* 2008 WL 2465892, at *3 (A FERC Certificate "was virtually conclusive with respect to the right to condemn."). The Court further finds that the interests condemned by ANR are consistent with the authority granted it by the FERC Certificate and within the scope of such authority, and that ANR is authorized by the Natural Gas Act to exercise the power of eminent domain. Therefore, the Court hereby confirms ANR's right to condemnation of the servitudes identified in the record. [Docs. 84-1 to 84-14].

### III. Preliminary Injunction

Because ANR has a substantive right to condemn under the Natural Gas Act, the Court must next consider whether it is entitled to preliminary injunctive relief. To obtain a preliminary injunction under Federal Rule of Civil Procedure 65, a movant must establish: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the injunction is not issued; (iii) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (iv) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (citation omitted). The Court finds that the law and the evidence submitted by ANR satisfies these four requirements.

First, ANR has shown a likelihood of success on the merits. ANR has been issued a valid FERC Certificate, and all requirements under the Natural Gas Act for ANR to exercise the right of eminent domain have been satisfied. There is thus a substantial likelihood that ANR will prevail on the merits of its condemnation claim. *See Columbia Gas Transmission Corp. v. An Easement,* 2006 WL 401850, at *3 (E.D. Pa. Feb. 16, 2006) ("[The plaintiff] is likely to succeed on the merits of its condemnation claim because it holds a" FERC Certificate.)

Second, ANR has shown that there is a substantial threat that irreparable harm will result if the injunction is not granted and is therefore unable to obtain immediate entry upon the Property to begin construction. As detailed below, the evidence and testimony presented by ANR show a substantial likelihood that both it and the public at large will be irreparably harmed if the Project is not in service by

July 25, 2026.[7] [Doc. 4-2, ¶¶ 8-9, 12-13, 17]. *See Tenn. Gas Pipeline Co. v. New England Power, C.T.L., Inc.*, 6 F. Supp. 2d 102 (D. Mass. 1998) ("[I]nterference with pipeline company's use of land would irreparably harm it and [the] public by likely preventing project completion before FERC-imposed deadline."); *E. Tenn. Nat. Gas, LLC v. 3.62 Acres in Tazewell Cnty., VA*, 2006 WL 1453937 (W.D. Va. May 18, 2006) (same).

At the evidentiary hearing, Plaintiff proffered Eduardo Tapia, the Project Manager for the Oak Grove Enhancement Project in Richland and West Carroll Parishes, as a witness. At the hearing, Mr. Tapia testified that Plaintiff must gain possession of the Property as soon as possible, but not later than February 24, 2025, so that ANR can complete construction of the proposed facilities and make those facilities available for service by the FERC Certificate's July 25, 2026, deadline.[8] In support, Mr. Tapia explained that if Plaintiff is unable to complete tree felling prior to April 15, 2025, it will be unable to begin that work until August 1, 2025, due to restrictions on tree felling during the migratory bird nesting season. Mr. Tapia also testified that if ANR does not have possession by February 24, 2025, there is a chance that it will lose contractors and possibly have to resubmit permits because of delay. Lastly, Mr. Tapia testified that summer is the most ideal time for the Project to avoid

---

[7] The FERC Certificate requires ANR to complete "construction of the proposed facilities *and* make those facilities available for service by July 25, 2026." [Doc. 77, ¶ 3] (emphasis in original). To comply with this temporal requirement, ANR alleges that is must have immediate possession of the Property at the latest by February 24, 2025. *Id.*

[8] Mr. Tapia also testified that the latest possible start date changed from January 15, 2025, to February 24, 2025, because the final contract was awarded, and the final schedule was subsequently completed.

Page **7** of **15**

delays because it is the driest part of the year and because the sunlight provides longer working hours.[9]

In consideration of Mr. Tapia's testimony and because industry standards require that the Project be constructed using linear construction, the Court finds that access to the entirety of the Property must be granted immediately to begin construction-related activities to meet the FERC in-service date. [Doc. 4-2, ¶ 9]. The Court further finds that any delay in granting ANR access to the Property to begin construction activities will impede ANR's ability to provide the needed energy delivery services determined by FERC to be in the best interest of the public. *Id.* The longer the Project takes to complete, the greater the risk of outages and service disruptions to customers due to integrity issues of the existing pipeline.

Third, the Court finds that ANR demonstrates that the threatened injury to it outweighs the harm an injunction will cause Defendants. Defendants argue that Plaintiff cannot meet its burden to establish that it is entitled to a preliminary injunction granting immediate access to the Property because the FERC Certificate was issued based on information that is no longer valid. [Doc. 78, p. 4]. Specifically, Defendants argue that on December 4, 2024 – well after all the supporting documents for the Plaintiff's application for a FERC Certificate had been prepared and submitted to FERC – an economic development project was announced in Holly Ridge, Louisiana, wherein Meta Platforms, Inc. is expected to build an Artificial Intelligence Data Center (hereinafter "the Data Center"). *Id*. at p. 3. A portion of the

---

[9]   Mr. Tapia stated that if the Project occurred in the winter months, it would be subject to delays because of: (i) less daylight hours during the workday, (ii) hurricane season, (iii) the holidays, and (iv) a greater likelihood of rain.

Page **8** of **15**

Project will be located about 3.5 miles away from the northernmost portion of the Data Center and 1.6 miles away from the southernmost portion of the Data Center. [Doc. 78-1, p. 2].

The Data Center is projected to take three to five years to build, and it is estimated that there will be 5,000 construction workers on the site during the peak build period. *Id.* at p. 1. After the Data Center is completed, it is expected to employ more than 500 full-time employees. *Id.* In conjunction with the Data Center, Entergy Louisiana will be constructing two generators and other power infrastructure (hereinafter, the "Entergy Project") nearby. It is predicted that the Entergy Project will take approximately three years to complete, require 6,800 workers for its construction, and create 44 permanent jobs. *Id.*

Defendants argue that, because of this unforeseen development, the data utilized by FERC in determining whether to grant the FERC Certificate could not have accurately reflected the changes that the Data Center and Entergy Project will cause in the area of the Property. [Doc. 78, p. 4]. Defendants argue that, consequently, FERC did not have the information it needed to make its determination as to whether the Project was engineered sufficiently to handle the forthcoming changes or the impact the Project will have on the environment, traffic, population, etc., when deciding on the public necessity of the Project. *Id.* Defendants argue that on this ground, the FERC Certificate is likely appealable, despite the fact that all deadlines to appeal the Certificate have passed. *Id.* at pp. 6-7.

It is well established that "a federal district court's sole function in an eminent domain proceeding under the NGA is to order condemnation in accordance with a

FERC [c]ertificate." *Texas E. Transmission, LP v. Karankawa Bay, Inc.*, 2023 WL 4174523, at *4 (E.D. La. June 26, 2023). "Review of FERC [c]ertificates is within the exclusive jurisdiction of federal courts of appeals." *Id.* at *4, *citing Kansas Pipeline Co. v. A 200 Foot by 250 Foot Piece of Land, Located in Section 6, Southwest Quarter, Township 32 South, Range 10 West, County of Barber, state of Kansas*, 210 F. Supp. 2d 1253, 1256 (D. Kan. 2002). Thus, the role of the district court is merely to enforce the rights provided by the FERC Certificate. *Texas E. Transmission, LP*, 2023 WL 4174523 at *4.[10] Here, ANR holds a facially valid FERC Certificate authorizing construction of the Project. Defendants' objection to the FERC Certificate – that it was issued prior to the announcement of potential future economic developments in the area – was not raised before the Commission within the allotted 30 days for rehearing.

This notwithstanding, the testimony taken at the hearing addressed Defendants' concerns that the Data Center and Entergy Project will increase the population in the area of the pipeline and is therefore inconsistent with the FERC Certificate. Specifically, the Court heard testimony from Mr. Tapia that yearly

---

[10] The *Texas E. Transmission* court stated:

> The eminent domain authority granted [to] the district courts under § 7(h) of the NGA, 15 U.S.C. § 717f(h), does not provide challengers with an additional forum to attack the substance and validity of a FERC order. The district court's function under the statute is not appellate but, rather, to provide for enforcement. Once the holder of a FERC [Certificate] asks a district court to enforce its right to condemn, the findings in the FERC [c]ertificate are treated as conclusive, [including FERC's findings as to necessity.]

2023 WL 4174523, at *4.

evaluations are performed on existing pipelines to determine whether changes in population warrant a class change on such projects, allowing the pipeline to be modified accordingly.[11] Population changes, if and when they occur, are monitored and addressed by pipeline companies as a matter of course.

Finally, granting the injunction to permit ANR to begin construction prior to the determination of just compensation will not cause the Defendants to lose or compromise any right they have to just compensation under federal law. *Gulf Crossing Pipeline Co., LLC*, 2008 WL 2465892, at *6 ("[A]ny claim by the landowner that immediate possession will somehow prejudice his claim for just compensation, has been rejected by the courts."). The value of just compensation is not affected one way or the other by ANR beginning the Project prior to the determination of compensation. Moreover, pursuant to the Court's Order Granting ANR's Motion for Leave to Deposit Money with the Registry of the Court [Doc. 85], ANR has paid into the Court's registry an amount equal to its estimation of just compensation to be paid. Upon entry of the instant Order granting ANR's request for a preliminary injunction, the Defendants shall have the right to withdraw those funds subject to the terms of the Deposit Order, without waiving any right to argue at trial that just compensation should be higher.

Fourth, ANR has established that the granting of the injunction will not disserve the public interest. FERC's issuance of the Certificate is evidence that it has

---

[11] The Court highlights that Defendants presented no testimony at the hearing – instead relying solely on an Affidavit attached to its Opposition. [Doc. 78-1]. The Court therefore did not hear any testimony, for instance, regarding the likelihood of increased residential construction or population growth resulting from the Data Center and Entergy Project.

so determined, and this Court may not contradict FERC's determination in that regard. *See Fla. Power & Light Co. v. FERC*, 598 F.2d 370, 379 (5th Cir. 1979) ("It is well established … that the overall purpose of the Natural Gas Act is to protect the interest of consumers in an adequate supply of gas and at reasonable rates."). Additionally, the Court finds that the grant of injunctive relief to permit ANR to begin construction of the Project prior to the determination of just compensation furthers the public interest in that it will aid in ensuring that the FERC-approved Project will not be delayed. *See Gulf Crossing Pipeline Co., LLC*, 2008 WL 2465892, at *7. Accordingly, for the foregoing reasons, the Court finds that ANR's request for a preliminary injunction is well taken and should be granted.

## CONCLUSION

Considering ANR's Motion and the evidence and arguments received by the Court during the February 18, 2025, hearing on this matter:

IT IS HEREBY ORDERED that:

1. Pursuant to the FERC Certificate and 15 U.S.C. § 717f(h), ANR is entitled to condemn the servitudes and property rights as set forth in the Complaint in Condemnation, as amended by the First Amended Complaint in Condemnation, and has, by and in the filing of this action, complied with all procedural requirements set forth in 15 U.S.C. § 717f(h) and Federal Rule of Civil Procedure 71.1.

2. ANR has established that it is entitled to a preliminary injunction in this matter for the reasons discussed herein. Accordingly, upon entry of this Order, ANR is entitled to immediate possession of the servitude rights sought herein as necessary to the natural gas pipeline project authorized by the FERC Certificate.

3.  Specifically, ANR is entitled to immediate relief in the form of temporary construction servitudes and permanent servitudes on the following properties:

    a.  The property of George B. Franklin & Son, Inc., Tract No. RI-004.000, on which ANR is seeking a servitude and right-of-way comprising 2.9290 acres, more or less (a 1.105 acre permanent servitude and 1.824 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-1].

    b.  The property of Dairyland, LLC, Tract No. RI-005.000, on which ANR is seeking a servitude and right-of-way comprising 3.8770 acres, more or less (a 1.349 acre permanent servitude and 2.528 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-2].

    c.  The property of Dairyland, LLC, Tract No. RI-007.000, on which ANR is seeking a servitude and right-of-way comprising 3.7950 acres, more or less (a 1.349 acre permanent servitude and 2.446 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-3].

    d.  The property of C&G of Winnsboro, Inc., Tract No. RI-015.000, on which ANR is seeking a servitude and right-of-way comprising 0.3420 acres, more or less (a 0.074 acre permanent servitude and 0.268 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-4].

    e.  The property of Regan Cobb, LLC, Tract No. RI-016.000, on which ANR is seeking a servitude and right-of-way comprising 3.6090 acres, more or less (a 1.206 acre permanent servitude and 2.403 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-5].

    f.  The property of C&G of Winnsboro, Inc., Tract No. RI-017.000, on which ANR is seeking a servitude and right-of-way comprising 4.0240 acres, more or less (a 1.461 acre permanent servitude and 2.563 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-6].

    g.  The property of R&S of Rayville, LLC and Scogan, LLC, Tract No. RI-018.000, on which ANR is seeking a servitude and right-of-way comprising 25.8050 acres, more or less (a 5.412 acre permanent servitude and 20.393 acre temporary servitude), as is more

    particularly described and depicted in the plat attached as at [Doc. 84-7].

h. The property of C&G of Winnsboro, Inc., Tract No. RI-019.000, on which ANR is seeking a servitude and right-of-way comprising 7.5920 acres, more or less (a 2.129 acre permanent servitude and 5.463 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-8].

i. The property of George B. Franklin & Son, Inc., Tract No. RI-023.000, on which ANR is seeking a servitude and right-of-way comprising 30.8020 acres, more or less (a 9.210 acre permanent servitude and 21.592 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-9].

j. The property of R&S of Rayville, LLC and Scogan, LLC, Tract No. RI-023.100, on which ANR is seeking a servitude and right-of-way comprising 0.2840 acres, more or less (a 0.077 acre permanent servitude and 0.207 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-10].

k. The property of Brian Lane Miller, Tract No. WC-026.000, on which ANR is seeking a servitude and right-of-way comprising 3.7520 acres, more or less (a 1.302 acre permanent servitude and 2.45 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-11].

l. The property of Ray G. Raley and Nina G. Raley, Tract No. WC-036.000, on which ANR is seeking a servitude and right-of-way comprising 6.6760 acres, more or less (a 1.952 acre permanent servitude and 4.724 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-12].

m. The property of Duck Flight, Inc., Tract No. WC-037.000, on which ANR is seeking a servitude and right-of-way comprising 9.0182 acres, more or less (a 2.455 acre permanent servitude and 6.5632 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-13].

n. The property of Donald M. Raley and Dondarosa Farms, LLC, Tract No. WC-038.000, on which ANR is seeking a servitude and right-of-way comprising 16.5190 acres, more or less (a 5.576 acre permanent

      servitude and 10.943 acre temporary servitude), as is more particularly described and depicted in the plat attached at [Doc. 84-14].

4. ANR is entitled to possession of the servitudes described in [Docs. 84-1 to 84-14] to construct, operate, maintain, replace, repair, remove, or abandon pipelines and appurtenant equipment and facilities, as well as the right to change the location of the installed pipelines within the area of the permanent servitudes as may be necessary or advisable.

5. ANR is further entitled to immediate possession of temporary servitudes on the Property, as described in the [Docs. 84-1 to 84-14], to enable ANR to construct the Project and engage in restoration or clean-up activities. These temporary servitudes will expire when all work, including restoration, is complete.

6. ANR shall also have reasonable rights of ingress and egress from and to the servitudes, and the right of access through any existing roads on the Property, for the purposes of access to the servitudes.

7. The specific servitudes for which ANR is granted preliminary possession are set forth in the attached plats of the Property and legal descriptions, which are set forth in [Docs. 84-1 to 84-14].

8. Upon the entry of this Order, Defendants shall be entitled to draw from the funds deposited by ANR with the Clerk of Court the amount of estimated just compensation deposited by ANR related to the Defendants' Property, provided that the Defendants satisfy all conditions of the Deposit Order.

9. The Court further reserves for another date the determination of the amount of any just compensation owed to Defendants in this matter.

THUS, DONE AND SIGNED in Chambers on this 20th day of February 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE