**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| ANR PIPELINE COMPANY | CIVIL ACTION NO. 24-1403 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| 170.7942 ACRES MORE OR LESS IN RICHLAND AND WEST CARROLL PARISHES, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## MEMORANDUM RULING

ANR Pipeline Company ("ANR Pipeline") has filed a motion for partial summary judgment. Record Document 158. The motion calls for fixing the date of valuing the land that it has condemned. *Id.* at 3. ANR Pipeline wants to value the land on the date that it took possession—the date of the injunction. *Id.* The defendants, George B. Franklin & Son, Inc., C&G of Winnsboro, Inc., Regan Cobb, LLC, R&S of Rayville, LLC, and Scogan, LLC (collectively, "landowners"), however, argue that the land should not be valued until the date of trial, so that they can benefit from meteoric market growth. For the following reasons, ANR Pipeline's motion for partial summary judgment is GRANTED, and the date for valuing the land is fixed at February 20, 2025.

## BACKGROUND

ANR Pipeline filed this lawsuit under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to condemn temporary and permanent servitude interests in twenty-one tracts of land in Richland and West Carroll Parishes. Record Document 1 at 1. Shortly after,

ANR Pipeline moved for a preliminary injunction and an order of condemnation. Record Document 4. ANR Pipeline asked for immediate possession of the land so that it could begin construction and meet service deadlines that the Federal Energy Regulatory Commission ("FERC") had set. Record Document 4-1 at 15.

Before the preliminary injunction hearing, ANR Pipeline was ordered to deposit into the registry "the highest money offer" made to the landowners. Record Document 80 at 2. ANR Pipeline complied, and on February 18, 2025, deposited $475,112.08 into the registry. Record Documents 83, 85, 88.

On February 20, 2025, this Court issued a preliminary injunction. Record Document 89. That injunction "entitled [ANR Pipeline] to immediate possession of the servitude rights sought herein as necessary to the natural gas pipeline project authorized by the FERC Certificate." *Id.* at 12. The injunction also "entitled [ANR Pipeline] to possession of the servitudes…to construct, operate, maintain, replace, repair, remove, or abandon pipelines and appurtenant equipment and facilities, as well as the right to change the location of the installed pipelines within the area of the permanent servitudes[.]" *Id.* at 15. The injunction also awarded the landowners "the right to withdraw" funds that "ANR has paid into the Court's registry [reflecting] an amount equal to its estimation of just compensation to be paid." *Id.* at 11.

After the injunction, ANR Pipeline entered the condemned land and completed its pipeline construction. Record Document 131 at 2. But remediation work remains ongoing. Record Document 160 at 2. As for the landowners, they filed motions for disbursement and received their respective shares of ANR Pipeline's earlier deposit.

*See, e.g.*, Record Documents 94, 95. The condemned land, meanwhile, has continued to increase in market value because of a nearby multi-billion dollar data center development. Record Document 167 at 9.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the burden at trial will rest on the nonmovant, the movant need not produce evidence to negate the elements of the nonmovant's case; rather, it need only point out the absence of supporting evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant satisfies its initial burden, the nonmovant must demonstrate a genuine dispute exists by "going beyond the pleadings" and "designating specific facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This burden requires more than metaphysical doubt, conclusory or unsubstantiated allegations, or a mere scintilla of evidence. *Id.*

## ANALYSIS

The Natural Gas Act, 15 U.S.C. § 717 *et seq.*, grants private companies condemnation power. *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 487 (2021) ("Because the Natural Gas Act delegates the federal eminent domain power to private parties, those parties can initiate condemnation proceedings[.]"). For more than twenty years, condemnation under the Natural Gas Act has often followed a "hybrid framework." *See, e.g.*, *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 827 (4th

Cir. 2004) (collecting cases); *Gulf Crossing Pipeline Co., LLC v. 86.36 Acres of Land*, No. 08-689, 2008 WL 2465892, at *3 (W.D. La. June 18, 2008) (collecting cases).

Under this framework, the plaintiff, also called the condemnor, files a complaint pursuant to the Natural Gas Act identifying the land and interests it wants to take. *See Sage*, 361 F.3d at 819. Then, the condemnor deposits into the registry of the court an amount that represents the sum of the last offers made to the defendants. *Gulf Crossing*, 2008 WL 2465892, at *6 n.5. The condemnor also files a motion for a preliminary injunction seeking immediate possession of the land. *See id.* at *2. Using the same four-element test that applies to all preliminary injunction inquiries, the district court may then give the condemnor immediate possession and permit the defendants to withdraw their share of the deposited funds. *Id.; see also Sage*, 361 F.3d at 820 (noting that "harm to the landowners would be slight, especially because they had the right to draw down the money [condemnor] deposited with the [registry.]").

This case followed that hybrid procedure. ANR Pipeline filed its complaint in condemnation identifying the twenty-one tracts of land and the servitude interests it wanted. Record Document 1. It then moved for a preliminary injunction and deposited money amounting to the highest offers that it made to the landowners. Record Documents 4, 80, 83. Following a hearing, a preliminary injunction was issued on February 20, 2025, that gave ANR Pipeline immediate possession of temporary and permanent servitudes for the land. Record Document 89.

The only issue left is to determine the amount of just compensation. Record Document 89 at 15. ANR Pipeline's pending motion asks to fix the date for valuing

the land. Record Document 158. To start, despite the landowners' arguments, the pending motion does not resolve any factual dispute about the amount owed, the remediation damages, the proper measure of compensation, or the competing expert appraisals. *See, e.g.*, Record Document 167 at 6. The pending motion and this opinion do one thing—fix the date for appraising the land.

Fixing the date for valuing the land, as the United States Supreme Court has said, "is crucial to determination of the amount of compensation to which the owner is constitutionally entitled." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 11 (1984). The Court finds fixing the date for valuing the land ripe for summary judgment, because, although it presents a mixed question of law and fact, none of the possible dates are disputed. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 228 (2020) ("We have sometimes referred to such a question, which has both factual and legal elements, as a 'mixed question of law and fact.'"); *St. Romain v. Indus. Fabrication & Repair Serv., Inc.*, 203 F.3d 376, 378 (5th Cir. 2000) (noting summary judgment on a mixed question is mandated "where the facts and the law will reasonably support only one conclusion.").

To determine the date for valuing the land, federal courts in the Fifth Circuit look to state law. In *Mississippi River Transmission Corporation v. Tabor*, 757 F.2d 662 (5th Cir. 1985), the United States Court of Appeals for the Fifth Circuit held that the Natural Gas Act "requires that the practice and procedure in federal expropriation proceedings conform as nearly as possible with the practice and procedure to be followed in a state court action in the state where the property being

expropriated is situated." *Tabor*, 757 F.2d at 665 n.3. *Tabor* involved four tracts of land in Lincoln Parish, Louisiana, and the Fifth Circuit concluded that "Louisiana law controls the issues in this case." *Id.*

Since *Tabor*, at least two district courts have followed its holding and applied state law when determining the valuation date. For example, relying upon *Tabor*, the United States District Court for the Southern District of Texas explained that in a Natural Gas Act condemnation "Texas law controls the method of calculating damages…[and] [t]he date of taking is the date on which the condemnor lawfully takes actual possession or takes constructively by depositing funds in the court's registry." *Gulf South Pipeline Company, LLC v. TX-MQ-0068.00000*, No. 19-2885, 2020 WL 4333609, at *2 (S.D. Tex. July 28, 2020) (citing *City of Fort Worth v. Corbin*, 504 S.W.2d 828, 830 (Tex. 1974)); *see also Nat. Gas Pipeline Co. of Am., LLC v. Tract No. TX-WA-008.050*, No. 20-0003, 2022 WL 1241969, at *3 (W.D. Tex. Apr. 27, 2022) ("Texas state law governs the precise award of just compensation."). Therefore, based on the rule of *Tabor*, Louisiana law governs the date for valuing the land that ANR Pipeline has taken under the Natural Gas Act.

Louisiana law has two methods of what it calls expropriation. 1A Frank L. Maraist, La. Civ. L. Treatise, Civil Procedure-Special Proceedings § 9.9 (2022) (explaining "[e]xpropriation, or a condemnation action, is the taking of private property for public use."). Louisiana Revised Statute § 19:1 *et seq.* codifies the authority and procedures for "formal expropriation." *See Jungeblut v. Jefferson Par.*, 485 So. 2d 974, 977 (La. App. 5 Cir. 1986) ("Title 19 of the Revised Statutes governs

the expropriation of property for public use by the state, municipal corporations or certain other corporations[, and] delineates the formal procedures the expropriating entity shall follow."). In a formal expropriation, the expropriating entity files a petition for expropriation in the district court of the parish that holds the property. La. Rev. Stat. § 19:2.1. After a trial, the district court determines whether the taking is a public necessity and determines the amount of compensation. *Id.* at § 19:8. Importantly, the rights of possession and ownership of the land do not transfer until after the trial has ended, the judgment has been rendered, and the expropriator has paid the compensation award. *Id.* at § 19:10; *see also Ill. Cent. R.R. Co. v. 16.032 Acres of Land in Jefferson Par., La.*, No. 98-3337, 1999 WL 756454, at *3 (E.D. La. Sept. 23, 1999) ("The language in § 19:10 means that the railroad will not acquire rights to the land in issue until it pays whatever compensation is awarded in the expropriation proceedings to the rightful owner of the land.").

Valuation in a formal expropriation case is fixed as of the date of trial. *Bd. of Com'rs of New Orleans Exhibition Hall Auth. v. Miss. Pac. R. Co.*, 625 So. 2d 1070, 1079 (La. App. 4 Cir. 1993) ("[T]he trial judge did not err…in instructing the jury to determine the value of the property as of the date of trial."). That date is used because, as one Louisiana appellate court explained, "under the Louisiana constitution as well as the dictates of [federal law], no actual taking (meaning a transfer of the rights to possession and ownership) can occur until compensation has been paid either to the property owner, or into the registry of the court." *Id.*

Louisiana also has a "quick taking" mechanism. *Ryan v. Calcasieu Par. Police Jury*, 256 So. 3d 1044, 1050 n.7 (La. App. 3 Cir. 2018) ("Such expropriation proceedings are referred to as 'quick takings.'"). In a quick taking, the expropriating entity obtains possession and title to the land *before* the trial court renders judgment. *State of La., through Dep't of Highways v. Webb*, 209 So. 2d 598, 600 (La. App. 2 Cir. 1967). Procedurally, the expropriating entity files a petition, and following issuance of an ex parte order, deposits an estimate of its just compensation into the registry. *State of La., through Dep't of Highways v. Trippeer Realty Corp.*, 276 So. 2d 315, 318 (La. 1973).

In a quick taking, the land is valued on the date when the suit was filed and the deposit was made. *State of La., through Dep't of Highways v. Romano*, 343 So. 2d 222, 226 (La. App. 3 Cir. 1977) ("[T]he market value of the property taken is determined as of the time of the taking."); *State of La., through Dep't of Transp. & Dev. v. Hammons*, 550 So. 2d 767, 772 (La. App. 2 Cir. 1989) ("[T]he date of the taking is the date the suit is filed."). The Louisiana Court of Appeal for the First Circuit explained that this date is used because that is when "the property rights specified in the petition are transferred to and vested in the state." *State of La., through Dep't of Highways v. Rosenblum*, 344 So. 2d 424, 425 (La. App. 1 Cir. 1977).

ANR Pipeline and the landowners disagree on which date should be used. The landowners ask to treat this litigation like a formal expropriation case and use the date of trial. *See* Record Document 167 at 12 (citing *Bd. of Com'rs of New Orleans Exhibition Hall Auth.*, 625 So. 2d at 1078-79). ANR Pipeline, on the other hand, asks

to treat its condemnation like a quick taking and use the date when possession transferred. *See* Record Document 170 at 14.

The Court finds that the day its preliminary injunction was issued, February 20, 2025, is the proper date for valuing the land. Two reasons support this date. First, the hybrid framework used for condemnation under the Natural Gas Act most resembles the quick taking procedure under Louisiana law. Both place the condemnor in possession of the land before a court conducts a trial and renders a judgment. And both require the condemnor to deposit an estimate of the amount owed as just compensation for the taking. Second, and perhaps more importantly, choosing the date when this Court transferred possession of the land also satisfies the concern underlying both formal expropriations and quick takings in Louisiana law—that a taking occurs only after "compensation has been paid either to the property owner, or into the registry of the court." *Bd. of Com'rs of New Orleans Exhibition Hall Auth.*, 625 So. 2d at 1079; *see also Hammons*, 550 So. 2d at 772.

In the alternative, the Court also finds that this date of February 20, 2025, is the proper date for valuing the land under federal law. ANR Pipeline argues that the Court should not follow *Tabor* and its progeny because it had been wrongly decided. *See* Record Document 170 at 5-11. ANR Pipeline believes that federal law should control the date of valuation, and a pending case before the United States Supreme Court will overrule cases like *Tabor* that hold state law controls determining the measure of compensation under the Natural Gas Act. *Id.* at 7. This Court cannot ignore, much less overrule, a published decision of the appellate court. *See In re*

*Bonvillian Mar. Serv., Inc.*, 19 F.4th 787, 789-90 (5th Cir. 2021) (holding district courts cannot "overturn the rule" and are "bound by the rule" of a published appellate decision unless the circuit decides to overturn it). Still, as a precaution, the Court considers the application of federal law to ANR Pipeline's condemnation.

Louisiana's procedures for expropriation, both formal and quick taking, mirror the mechanisms under federal law. Formal expropriation matches the federal procedure of "straight condemnation." *Bd. of Com'rs of New Orleans Exhibition Hall Auth.*, 625 So. 2d at 1078-79 (considering formal expropriation and explaining "that, in a 'straight condemnation procedure' (one, as here, where suit is filed and the amount of compensation is judicially determined prior to the government's paying for or taking title to the land), the taking occurs on the date the government tenders payment for the property rather than on the date the condemnation suit is filed.").

And Louisiana's quick taking procedure reflects a federal tool of the same name. *Red River Waterway Comm'n v. Fredericks*, 566 So. 2d 79, 82 (La. 1990) (explaining that Louisiana's "quick-taking statute…was patterned after the Federal Declaration of Taking Act[.]"). Like its state counterpart, in a federal quick taking, the condemnor deposits the estimated value of the property into the registry and those funds become available to the property owner. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 4-5. Title and right of possession vest in the condemnor immediately upon the deposit. *Id.* at 5.

Another federal court considered the precise issue here, the date of valuation for land condemned under the Natural Gas Act, and it held that the land should be

valued on the date when the condemnor obtained a right of possession. *N. Nat. Gas Co. v. Approximately 9117 Acres in Pratt, Kingman & Reno Cnty., Kan.*, No. 10-1232, 2013 WL 3328773, at *7 (D. Kan. July 2, 2013). After explaining that the hybrid procedure of the Natural Gas Act does not fit neatly into either straight condemnation or quick taking, the court reasoned that the valuation date should be fixed on the date when the condemnor made a deposit because on that date it "perfected its right to possession of the property." *Id.*

In this case, ANR Pipeline obtained possession of the property on February 20, 2025, when this Court issued a preliminary injunction that gave it "immediate possession of the servitude rights sought[.]" Record Document 89 at 12. At that time, ANR Pipeline had already deposited its estimate of just compensation into the court's registry, and these funds became available to the landowners. Record Documents 80, 83, 89. Therefore, assuming federal and not state law applies, the Court would also fix the date for valuation as February 20, 2025.

For their part, the landowners plead for the Court to consider "extraordinary market conditions" and fix the date for valuing the land as the date of trial. Record Document 167 at 9. The landowners contend that the value of their land has grown explosively since ANR Pipeline obtained possession because Meta Platforms, Inc. has begun development of a multi-billion dollar data center. *Id.* The landowners argue that this dramatic change means that the date of trial should be used so that they can benefit from the growth. *Id.* at 12.

Their argument, however sympathetic, cannot prevail. The only supporting authority offered by the landowners is a formal expropriation (or straight condemnation) case, and as this ruling just explained, that procedure is not applicable here. *See* Record Document 167 at 12. Furthermore, in the context of a quick taking condemnation, the Fifth Circuit held that land should be valued "at the time of taking" and that exceptional circumstances, including a "dynamic increase" in property values, "cannot justify the measurement of compensation as of any date later than the time of taking." *United States v. 161.99 Acres of Land, More or Less, in Collin Cnty., Tex.*, 512 F.2d 65, 66 (5th Cir. 1975). Accordingly, the landowners' argument that their exceptional circumstances should justify moving the date of valuation fails.

**CONCLUSION**

Considering the foregoing, the motion for partial summary judgment to fix the date of property valuation, Record Document 158, is GRANTED. The date for valuing the land is February 20, 2025. An order consistent with this ruling will issue forthwith.

**DONE AND SIGNED** at Shreveport, Louisiana, this 26th day of August, 2026.

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE